UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:16-cv-00230-RJC

| | |
|---|---|
| DIRIEK J. NANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Deriek J. Nance's ("Plaintiff's") Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12), and Defendant's Motion for Summary Judgment, (Doc. No. 13), and Memorandum in Support, (Doc. No. 14).

**I. BACKGROUND**

A.   Procedural Background

Plaintiff seeks judicial review of Defendant's denial of his social security claim. (Doc. No. 1). On April 2, 2013, Plaintiff filed his application for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 et seq. (Doc. Nos. 10 to 10-8: Administrative Record ("Tr.") at 163). In his application, Plaintiff alleged an onset date of August 20, 2008. (Tr. 170). Plaintiff's application was denied initially and upon consideration. (Tr. 11).

On April 16, 2015, a hearing was held in front of Administrative Law Judge ("ALJ") Theresa Jenkins. (Tr. 31–58). On May 13, 2015, ALJ Jenkins issued a decision finding Plaintiff

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

not disabled. (Tr. 11–25). The Appeals Council denied review of the ALJ's decision on October 28, 2016, making the ALJ's opinion the final decision of Defendant. (Tr. 1–6). Plaintiff now appeals the ALJ's decision, requesting this Court to issue a remand pursuant to 42 U.S.C. §405(g).

B. Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, on August 20, 2008, Plaintiff's alleged onset date, through March 31, 2009, the date Plaintiff was last insured.[2] (Tr. 11). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ ultimately concluded that Plaintiff was not under a disability at any point in the relevant timeframe. (Tr. 25).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
> (5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 23–24).

To begin with, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since August 20, 2008, his alleged onset date through the date Plaintiff was last insured, March 31, 2009. (Tr. 13). At the second step, the ALJ found that Plaintiff had the following severe impairments: "multiple sclerosis, adjustment disorder, depression, bipolar disorder, peripheral neuropathy, right shoulder impingement syndrome, and polysubstance abuse." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Tr. 14).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform:

> light work as defined in 20 CFR 404.1567(b) except that he could sit up to 6 hours and stand or walk up to 4 hours. He must have been allowed to alternate between sitting and standing up to two times each hour. He should have avoided ladders, ropes, scaffolds, unprotected heights, and around machinery with dangerous parts. He could only occasionally perform other postural activities. He could frequently but not continuously use his upper and lower extremities for pushing, pulling, and operating hand controls. He could frequently but not continuously use his right, dominant upper extremity for reaching overhead. He could follow short, simple instructions and perform routine tasks. He could not do work requiring a production rate or demand pace. He could maintain frequent but not continuous contact or interactions with coworkers, supervisors, and the public. He should have avoided work involving crisis situations, complex decision making, or constant changes in a routine setting.

(Id. at 16). In making her finding, the ALJ specifically stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that she "considered opinion

evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 23). Finally, at the fifth and final step, the ALJ concluded that, after "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id.). Therefore, the ALJ determined that "Based on the application for a period of disability and disability insurance benefits filed on April 2, 2013,the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2009, the last date insured." (Tr. 25).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales,

402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

In his appeal to the Court, Plaintiff argues that remand or reversal of the Commissioner's decision is warranted because the ALJ: (1) does not give a full function-by-function analysis of the nonexertional mental functions associated with Nance's mental impairments; and (2) accepted testimony from a vocational witness that appears to conflict with the DOT yet she fails to obtain an explanation from the vocational witness. (Doc. No. 12 at 5). For the reasons set forth below, the Court finds that the ALJ's decision does not contain sufficient error to warrant a remand or reversal pursuant to Sentence Four of 42 U.S.C. § 405(g).

A. Mental RFC

In her decision, the ALJ assigned an RFC that included the following mental limitations:

> He could follow short, simple instructions and perform routine tasks. He could not do work requiring a production rate or demand pace. He could maintain frequent but not continuous contact or interactions with coworkers, supervisors, and the public. He should have avoided work involving crisis situations, complex decision making, or constant changes in a routine setting.

(Tr. 16). Plaintiff argues that in determining this RFC, Plaintiff states that the ALJ failed to properly account for Plaintiff's moderate difficulties in concentration, persistence or pace; social functioning; and daily living.

1. The ALJ Properly Assessed Plaintiff's RFC in Light of His Moderate Limitation in Concentration, Persistence or Pace.

First, Plaintiff argues that the ALJ made no finding as to Plaintiff's ability to stay on task in regard to his mild difficulties with concentration, persistence or pace ("CPP"). (Doc. No. 12 at 6–7). The Court finds that the RFC's limitation of work not involving production rate or demand pace sufficiently accounts for Plaintiff's mild limitations in CPP.

"[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As such, limiting a claimant's RFC to simple, routine tasks or unskilled work does not alone address any moderate limitations in that claimant's CPP. In reaction to this rule, the Court has come across opinions where the ALJ added another limitation: working at a non-production pace. It is true that this Court has, along with many of the other district courts in North Carolina, found in the past that the limitation of nonproduction pace alone does not sufficiently account for a moderate limitation in CPP in light of Mascio. See Kittrell v. Colvin, No. 5:14-cv-163-RJC, 2016 U.S. Dist. LEXIS 33929, at *11 (W.D.N.C. Mar. 16, 2016) (unpublished).[3] It is also true that other courts have found that such a limitation does adequately address impairments in CPP when either supported by the medical

---

[3] See also Biddell v. Colvin, No. 1:15-cv-80-MOC, 2016 WL 815300, at *5 (W.D.N.C. Feb. 29, 2016); Weeks v. Colvin, No. 5:14-cv-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015); Jones v. Colvin, No. 4:14-cv-200-RN, 2015 WL 4773542, at *4 (E.D.N.C. Aug. 13, 2015); Hagedorn v. Colvin, No. 2:12-cv-85-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015); Salmon v. Colvin, No. 1:12-cv-1209-LCB, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015).

record or when added to other limitations, such as a stable work environment. See, e.g. Linares v. Colvin, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact.").[4]

Since Mascio, the Fourth Circuit has yet to explicitly unify the district courts' interpretations of non-production limitations' effects on moderate limitations of CPP. However, the cases Sizemore v. Berryhill, 878 F.3d 72 (4th Cir. 2017), and Jarek v. Colvin, No. 3:14CV620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015), report and recommendation adopted, No. 314CV00620FDWDSC, 2016 WL 626566 (W.D.N.C. Feb. 16, 2016), aff'd, 672 F. App'x 332 (4th Cir. 2017), show that that non-production or non-assembly line pace limitations can sufficiently account for a claimants' moderate limitation in CPP. In the wake of these cases, the Court finds the case Grant v. Colvin's summary of Mascio the most persuasive:

> In summary, the weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in this case sufficiently accounts for Plaintiff's moderate limitation in CPP. Moreover, that approach makes sense. In Mascio, the Fourth Circuit

---

[4] See also Gordon v. Berryhill, No. 3:16-cv-130, 2017 WL 5759940, 2017 U.S. Dist. LEXIS 195089, at *6–7 (W.D.N.C. Nov. 28, 2017) (unpublished); Jarek v. Colvin, 3:14-CV-620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015) (unpublished) adopted by 2016 WL 626566 (W.D.N.C. Feb. 16, 2016) aff'd by 2017 WL 129024 (4th Cir. Jan. 13, 2017); White v. Colvin, No. 1:14-CV-161-RLV, 2016 WL 1600313 (W.D.N.C. Apr. 21, 2016) (unpublished); Horning v. Colvin, No. 3:14-CV-722-RJC, 2016 WL 1123103 (W.D.N.C. Mar. 21, 2016) (unpublished); Linares v. Colvin, No. 5:14-cv-120-GCM, 2015 U.S. Dist. LEXIS 93291, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished); but see Hagedorn v. Colvin, No. 2:12CV85-RLV, 2015 WL 4410288, 2015 U.S. Dist. LEXIS 94071, at *10 (W.D.N.C. July 20, 2015) (unpublished) (finding that limiting a claimant to "simple, routine, and repetitive tasks in a low-production work setting with no extensive interaction with co-workers and no public contact, and that the work environment should be low-stress, defined as occasional change in job setting or decision making" accounted for some of the mental limitations found in SSR 96-8p, but nonetheless failed to address a limit in concentration).

> held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" … limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, <u>Mascio</u> does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016). Here, Plaintiff does not show evidence that he cannot perform even non-production-type work. In fact, the ALJ significantly reduced the weight given to the State agency psychological consultant's findings at the reconsideration level because it did not recognize Plaintiff's complaints of difficulty concentrating and maintaining attention. (Tr. 23). Then, the ALJ added the nonproduction limitations that the Court has found does sufficiently address CPP. (Tr. 16). Combined, the Court sees substantial evidence in the ALJ's mental RFC determination with respect to Plaintiff's mild limitation in CPP.

    2. The ALJ Properly Assessed Plaintiff's RFC in Light of His Moderate Limitation in Social Functioning.

Next Plaintiff claims that the ALJ "does not explain what she means by the social limitations she included in the residual function capacity." (Doc. No. 12 at 9). The ALJ limited Plaintiff's social interactions to maintaining frequent but not continuous contact or interactions with coworkers, supervisors, and the public. (Tr. 16). Plaintiff asks what this means. Does this mean "face-to-face, in the same room, in the same area, on the telephone, via email, via text, etc.?" (Doc. No. 12 at 10). Plaintiff cites no authority that the ALJ must specify the medium of communication Plaintiff is limited to in the RFC. Instead, Plaintiff haphazardly quotes <u>Patterson</u>

v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017), for the proposition "[s]how your work." (Id.). Patterson is wholly inapplicable to Plaintiff's argument as it deals with an ALJ's failure to document the application of the special technique. Patterson, 846 F.3d at 660. Plaintiff therefore fails to demonstrate an error in the ALJ's incorporation of Plaintiff's social interaction limitations.

        3. The ALJ Properly Assessed Plaintiff's RFC in Light of His Mild Limitation in Daily Living Activities.

Plaintiff's last complaint regarding the ALJ's mental RFC analysis involves Plaintiff's daily living activities. (Doc. No. 12 at 11). Specifically, Plaintiff claims that the ALJ did "not discuss what effect, if any, [Plaintiff's] mental restrictions in activities of daily living have on his ability to engage in work activity on a sustained basis." (Id.). The Court disagrees. In assessing Plaintiff's "paragraph B" criteria, the ALJ specifically stated that his limitations of daily living activities pertained to physical, not mental symptoms. (Tr. 15). That being said, the ALJ nonetheless mentioned Plaintiff's daily activities as discovered in consultative psychological exams performed by Dr. Abramowitz and Dr. Sadoff. (Tr. 21–22). Therefore, the ALJ sufficiently explained why Plaintiff's daily activities were not mentioned within the mental RFC analysis: those limitations were pertinent to Plaintiff's *physical* symptoms.

  B.    VE Conflicts

Lastly, Plaintiff argues that the ALJ did not sufficiently examine apparent conflicts between the Dictionary of Occupational Titles ("DOT") and the Vocational Expert's ("VE's") testimony. (Doc. No. 12 at 12). The VE suggested three jobs that Plaintiff could perform in the national economy: (1) folder, (DOT # 788.687-050); (2) packer, (DOT # 920.685-026); and (3) garment checker, (DOT # 221.587-010). (Tr. 54).

Plaintiff first points out that all three of these jobs require a "reasoning level" of two. (Doc. No. 12 at 15). The DOT states that workers in level two reasoning jobs must "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." 788.687-050 FOLDER, HAND, DICOT 788.687-050. Plaintiff states that the use of the words "detailed instructions" appears to conflict with a limitation to follow short, simple instructions. (Doc. No. 12 at 15). However, this does not present an apparent conflict. Work requiring a reasoning level of two "specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning." Pippen v. Astrue, No. 1:09–CV–308, 2010 WL 3656002, at *7 (W .D.N.C. Aug. 24, 2010).[5]

Next, Plaintiff takes issue with the folder and packer jobs that the ALJ adopted from the VE's testimony and their comparison to the RFC, which limits Plaintiff's ability to "frequently but not continuously use his right, dominant upper extremity for reaching overhead." (Tr. 16). Prior to digging into Plaintiff's argument, the Court notes that, even if he were correct, the ALJ would still have correctly relied upon the job of garment checker, (DOT # 221.587-010), which the VE stated had 68,090 jobs available in the national economy. (Tr. 54).

"[W]ork is determined to exist in the national economy 'when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.'" Bradshaw v. Berryhill, No. 116CV0969LOJFA, 2017 WL 962768, at *4 (E.D. Va. Feb. 3, 2017), report and recommendation

---

[5] See also Price v. Colvin, No. 1:16-CV-00010-GCM, 2017 WL 240083, at *3 (W.D.N.C. Jan. 19, 2017); Courtney v. Colvin, No. 2:12-CV-00073-MR-DLH, 2014 WL 1882583, at *3 (W.D.N.C. May 12, 2014); Snider v. Colvin, No. 7:12CV539, 2014 WL 793151, at *8 (W.D. Va. Feb. 26, 2014).

adopted, No. 1:16-CV-969, 2017 WL 958105 (E.D. Va. Mar. 9, 2017), aff'd, 704 F. App'x 266 (4th Cir. 2017) (citing 20 C.F.R. § 404.1566(b)). "If work that a claimant can perform exists in the national economy, that claimant will not be considered disabled." Id. In making his argument that the ALJ should have investigated apparent conflicts within the DOT for the folder and packer jobs, Plaintiff failed to argue that 68,090 garment checker jobs does not constitute a sufficient amount of jobs to warrant a finding of not disabled. See Critchley v. Colvin, No. 5:15-CV-08288, 2016 WL 3030211, at *8 (S.D.W. Va. May 4, 2016), report and recommendation adopted, No. 5:15-CV-08288, 2016 WL 3033763 (S.D.W. Va. May 26, 2016) (finding that the plaintiff waived their argument that a job did not constitute sufficient numbers in the national economy and citing cases where 5,000 jobs nationally was considered a significant number).

Lastly, Plaintiff parses through the descriptions of all three jobs and argues that they conflict with the RFC. Plaintiff states that the three jobs are production-paced jobs, which the ALJ limited Plaintiff from. (Doc. No. 12 at 17–18). Again, Plaintiff seeks out conflicts where none are to be found. Plaintiff's argument is based on the fact that the folder and packer jobs are part of the production of shoes and bottled beverages respectively. However, merely because a job produces products does not mean that it is performed at a production pace. Even if packer and folder were production-paced jobs, the garment checker job does not conflict with the RFC.

The DOT for Garment Checker states:

> Reads tickets attached to bundles of cut or wrapped towels to determine worker identity and weight and style of towels. Counts bundles of wrapped towels or estimates quantity of cut towels in bundle, using conversion chart based on weight and style, and records on production sheet quantity of bundles wrapped or towels cut by each worker for use in payroll computation. May load bundles on handtruck and move to next production area.

221.587-010 CHECKER, DICOT 221.587-010. Plaintiff suggests that "[m]ay load bundles on handtruck and move to next production area" indicates a production-paced job. (Doc. No. 12 at 18). However, the Court sees no conflict. There is merely a possibility that a garment checker would load bundles and move them to an area where other production jobs take place. There is no indication that the occasional transfer of bundles to other areas could not be done at the garment checker's desired pace.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**; and

3. The Clerk of Court is directed to close this case.

Signed: March 6, 2018

_____
Robert J. Conrad, Jr.
United States District Judge